Filed 12/17/25  In re R.V. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re R.V. et al., Persons Coming Under the Juvenile Court Law. | |
| | D086638 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4190ABCD) |
| v. | |
| T.Q., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniela Reali-Ferrari, Judge.  Affirmed in part and conditionally reversed in part with directions.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

David J. Smith, Acting County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

T.Q. (Mother) appeals the juvenile court's orders terminating her parental rights as to her four children under Welfare and Institutions Code[1] section 366.26. R.V. (V. Father) was undisputedly the biological and presumed father of R.V. and M.Q., the two older children. The two younger children, J.Q. and I.Q., were alleged to have a different biological father, T.S., who was never found for the proceedings, never appeared, and thus never sought to elevate his paternity status.

The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) failed to conduct an adequate section 224.2, subdivision (b), initial inquiry into the children's possible status as an "Indian Child" under the Indian Child Welfare Act (ICWA; § 25 U.S.C. 1902 et seq.). Mother contends that the Agency failed to inquire of V. Father's relatives,[2] specifically his mother, brothers, and sister. The Agency concedes it failed to fulfill its duties as to R.V. and M.Q. However, it argues it had no duty to inquire about J.Q. and I.Q. because the paternal relatives were not "extended relatives" of these younger minors or "others with an interest in the child." We agree. We conditionally reverse as to R.V. and M.Q. We affirm as to J.Q. and I.Q.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2022, the Agency filed a section 300, subdivision (b) petition on behalf of R.V. (then six years old), M.Q. (then five years old), J.Q. (then four years old), and I.Q. (then two years old). The petition alleged that these children were not provided with a suitable home, shelter, and place of abode

---

[1] All subsequent statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Any reference to "paternal" relatives refers exclusively to V. Father's relatives.

in that the home was infested, had trash piled throughout the residence, and there was very little food.

The Agency interviewed Mother and V. Father in February 2022, and both denied having any Native American ancestry. The parents also confirmed that V. Father was the biological father of the two older children, R.V. and M.Q.

Mother explained that T.S. was the biological father of J.Q. and I.Q., the younger two minors, but T.S. was not in their lives. She denied having contact information for T.S. V. Father agreed J.Q. and I.Q. were not his biological children.

V. Father advised the social worker that there were no custody orders, but he was the primary caretaker of the four children, they resided with him full time, and Mother was homeless. He and all four children also resided with his mother Angelica, brother Eddie, and twin brother Alejandro, V. Father reported that on one occasion, when his brother's girlfriend Barbara was watching the children, Mother came to the house and took the children.

At the March 16, 2022 detention hearing, the clerk conducted a search for and found a voluntary declaration of paternity signed by V. Father as to R.V., M.Q., and I.Q.[3] The matter was continued to the next day.

At the continued detention hearing, V. Father, through counsel, asked to elevate his paternity status to presumed for R.V. and M.Q., and the Agency

---

[3] The parties do not address this declaration having an impact on paternity, but the issue is moot for reasons that will be discussed later in the opinion. (See Cal. Rules of Court, rule 5.635 subd. (c) [an executed and filed voluntary declaration of paternity establishes presumed parentage under Family Code section 7611 and has the same force and effect as a judgment of parentage].)

submitted on this request.[4] The court detained the children out of the home, ordered visitation between the children and parents, and deferred on ICWA.

At the June 22, 2022 adjudication hearing, the court sustained the petition, removed the children from the care of the parents, and ordered reunification services for Mother and V. Father as to R.V. and M.Q.[5] As to J.Q. and I.Q., only Mother received services as they had no recognized biological or presumed father. The court found without prejudice that ICWA did not apply.[6] As to J.Q. and I.Q., the court also found that reasonable

---

[4] The minute orders for the March 17, 2022 continued detention hearing do not explicitly state that the court found V. Father presumed for any of the children. However, subsequent minute orders consistently list V. Father as "presumed" for both R.V. and M.Q., and the record otherwise supports this finding. Also, parties do not dispute that he is factually and legally the father of the older two children.

[5] Contrary to Mother's assertion, the record does not suggest the court ordered reunification services for V. Father in regard to J.Q. or I.Q. The social worker's recommendations for jurisdiction/disposition as to J.Q. and I.Q. refer to search efforts for the "<alleged father>", presumably referring to T.S. The respective recommendations for these minors also state, "The Health and Human Services Agency is ordered to provide services to the <mother> consistent with their case plan(s), and the <parents> <are> ordered to comply with those services." The recommendations for neither J.Q. nor I.Q. make any explicit reference to V. Father. They refer to "<mother>" or "<parents>" interchangeably but mainly refer to "<mother>" and references Mother by name.

[6] The minute orders for J.Q. and I.Q. contain the additional notation that "[t]here is reason to know that the child is an Indian child, and the agency must provide/has provided notice of the proceeding to all identified tribes and/or the Bureau of Indian Affairs as required by law." The court further found the child did not meet the definition of an "Indian child" for the purposes of ICWA.

search efforts were made to locate and notify the alleged father T.S. of these proceedings.

At the December 14, 2022 six-month review hearing, the Agency recommended more reunification services for both Mother and V. Father. The court adopted the Agency's recommendations. The court found that the Agency had conducted adequate ICWA inquiry and ICWA did not apply. Notice pursuant to ICWA was not required because the court knew each child was not an Indian child.

At the May 15, 2023 12-month review hearing, the Agency recommended terminating services for Mother and V. Father. The Agency reported that on May 1, 2023, "a relative search was completed for the mother and did not yield any results however, the father [V. Father] did yield. The Agency is currently mailing and calling the numbers to find a fit and willing relative."

At the contested 12-month review hearing on July 10, 2023, the court found the parents had not complied with their case plans, terminated reunification services, and set a permanency planning hearing pursuant to section 366.26.[7] It also found that ICWA did not apply.

At some point before January 10, 2024, the social worker spoke with a paternal aunt, who indicated the paternal grandmother would be willing to provide a permanent home for the older two children. The report stated a Spanish speaking social worker attempted to call and was unable to reach the paternal grandmother.

Generally, V. Father continued to visit the children regularly throughout the case. Although paternal uncle Alejandro had received

---

[7]    The respective minute orders for J.Q. and I.Q. each reflect that the court terminated reunification services for Mother (not V. Father) and ordered search efforts for these children's alleged father T.S.

permission to attend the March 11, 2025 visit with the children, he did not attend. V. Father advised this was due to the paternal uncle's work and that he told his brother he needs to show up if he commits to coming to a visit. V. Father continued to have weekly visits.

On April 16, 2025, V. Father told the social worker that he and his brother were living at the paternal grandmother's home in San Diego, but she had a stroke and was currently staying with her daughter in Arizona.

At the July 2, 2025 contested hearing, pursuant to section 366.26, the court found without prejudice that ICWA did not apply and terminated parental rights.

The record contains no indication that V. Father (or any other party) ever asked to elevate his paternity status for J.Q. or I.Q., or that anyone claimed to be their biological father, or that they had been adopted by anyone.[8]

T.S., the allegedly biological father of J.Q. and I.Q., never spoke to a social worker or appeared for the proceedings. He remained an "alleged" father and his whereabouts were unknown.

The record shows no Agency efforts to inquire of any paternal relatives about Native American ancestry. Based on the Agency's concession, this is not disputed.

STANDARD OF REVIEW

The court's finding that there is "no reason to know whether the child is an Indian child" is reviewed for substantial evidence, as it is a factual question. (*In re E.C.* (2022) 85 Cal.App.5th 123, 142 (*E.C.*).) We do not reweigh evidence, evaluate witness credibility, or resolve conflicting evidence.

_____

[8]    In January 2024, V. Father reported to the social worker that the paternal grandmother had adopted him and his brother.

6

We affirm if the trial court's determinations are supported by substantial evidence, even if substantial evidence to the contrary exists and the trial court might have reached a different result had it believed other evidence. (*Ibid.*)

When material facts are undisputed, we review de novo whether the court satisfied ICWA requirements. (*E.C., supra*, 85 Cal.App.5th at pp. 142–144.)

Mother asks us to adopt the hybrid standard of review used by some courts, which, in addition to the standards above, reviews the trial court's finding of due diligence and proper inquiry for abuse of discretion. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 579.)

Because it is undisputed that the Agency did not inquire about Native American ancestry of any paternal relatives, we reach the same conclusion under either standard.

## DISCUSSION

Mother contends that the Agency failed to inquire of paternal relatives that were known to the Agency and readily available, including the paternal grandmother, two uncles, and an aunt.

The Agency concedes that the record does not contain sufficient evidence of an adequate initial ICWA inquiry of the paternal relatives related to the older two children, R.V. and M.Q. However, it asks us to affirm for J.Q. and I.Q. because the paternal relatives are not "extended family members" or "others with an interest," either of which would be required to trigger ICWA inquiry.

In response, Mother argues that the record as to paternity is both "conflicting" and indicates that V. Father was ordered reunification services

7

as to all four children. By extension, Mother contends, the Agency should have inquired of paternal relatives for all the children.

When a child is taken into protective custody, the social worker has a duty to inquire of the "child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect" of whether the child may have Native American ancestry. (§ 224.2, subd. (b)(2).) Title 25 of the United States Code section 1903(9) defines "parent" for ICWA purposes as "any *biological* parent or parents of an Indian child or any *Indian person* who has *lawfully adopted* an Indian child (emphasis added)." We have concluded that even if a father is presumed (for example, via marriage), this does not equate to the requisite biological or adoptive parent status for the purpose of triggering ICWA notice on behalf of that parent. (*In re C.A.* (2018) 24 Cal.App.5th 511, 521 (*C.A.*).) "Extended family member" refers to someone who is over the age of 18 and is the "child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c).) The duty of ICWA inquiry encompasses family members that are related by adoption. (*D.S. v. Superior Court* (2023) 88 Cal.App.5th 383, 390–391.)

When the Agency conducts an inadequate initial ICWA inquiry, we conditionally reverse with directions for the Agency to comply with ICWA requirements. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1136 (*Dezi C.*).)

We accept the Agency's concession as to R.V. and M.Q., the undisputedly biological children of V. Father. The paternal uncles, grandmother, and aunt are "extended family members" of these older two children. (See § 224.1, subd. (c) ["extended family member" includes child's

8

grandparent, aunt or uncle]; 25 U.S.C. § 1903(9) ["parent" for ICWA purposes is a biological or adoptive parent].)

Regarding J.Q. and I.Q., we reject Mother's claim that the "conflicting" record suggests V. Father may have been elevated to their presumed father, therefore the Agency should have inquired of his relatives. Such requirements would only be triggered if V. Father were either the *biological* or *adoptive* father of J.Q. and I.Q. (See *C.A., supra*, 24 Cal.App.5th at pp. 520–521.) There is no dispute that V. Father is not the biological father of either. There is nothing in the record to suggest that he legally adopted any children. To support the contrary, he stated there were no custody orders. He was clearly familiar with the concept of adoption, since he disclosed that the paternal grandmother had adopted him and his brother. Furthermore, the plain language of title 25 of the United States Code section 1903(9) states that a qualifying adoptive parent must themselves be an "Indian person." Here, V. Father denied any Native American ancestry.

Absent a biological or adoptive tie to J.Q. and I.Q., V. Father's relatives do not qualify as "extended relatives." At best, the paternal relatives might qualify as "others with an interest in the child," but the record does not support this.[9]

The paternal grandmother was interested in placement of only the older two minors. (*In re D.B.* (2022) 87 Cal.App.5th 239, 243–244 [great-grandparent seeking placement qualifies as "others with an interest"].) Although the paternal grandmother and two paternal uncles resided in the home with all four minors and V. Father, there is no information about the childrearing dynamics in the home, aside from a mention of one of the uncle's

---

[9]     Mother does not expressly argue that the paternal relatives could be categorized as "others with an interest in the child." We address the merits, nonetheless.

9

girlfriends watching all the children at one point. (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 564, 567 [great-grandparent who was the primary caregiver for at least two months has "an interest in the child"]).[10] Paternal uncle Alejandro asked to visit the children in March 2025, but he did not make it to the visit. The record offers no explanation or reason why Alejandro could not have joined V. Father at any of his subsequent weekly visits throughout the case. Also, the record contains no information about the paternal aunt's relationship with the younger children.

DISPOSITION

We conditionally reverse as to R.V. and M.Q. The Agency is to inquire of all "reasonably available" paternal "extended relatives," including, but not necessarily limited to, the paternal grandmother Angelica, paternal uncles Eddie and Alejandro, and paternal aunt.[11] (See *Dezi C., supra*, 16 Cal.5th at p. 1140.)

---

[10] We do not suggest that either *In re D.B.* or *In re Dominick D.* establishes a minimum standard for who would be included in "others with an interest in the child."

[11] The agency conducted a placement search for and reached out to unspecified paternal relatives but did not inquire about Native American ancestry. The record does not reveal whether any of these relatives were reachable or "extended relatives." Father referred to the paternal grandmother having a daughter in Arizona, it is unclear if this is the same aunt with whom the social worker spoke. Also, V. Father reported having an adult daughter.

We affirm the orders regarding J.Q. and I.Q.


                                                            KELETY, J.

WE CONCUR:



McCONNELL, P. J.



CASTILLO, J.

11